**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

DAVID HOUGHTON, )
)
      Plaintiff, )
)
    v. )  C.A. No. 2025-1028-LM (NAC)
)
DEBBIE CERESINI and JOHN )
HOUGHTON JR., )
)
      Defendants. )

## ORDER REGARDING EXCEPTIONS

WHEREAS:

1. On February 13, 2026, a Magistrate in Chancery issued a bench ruling (Dkt. 34); an order granting in part the Defendants' Motion to Dismiss (Dkt. 26); an order denying Defendants' Cross-Motion for Attorneys' Fees and Expenses (Dkt. 21) and finding that Defendants are to be surcharged their attorneys' fees (Dkt. 28); an order directing Defendants to distribute to Plaintiff his share of the residue of the Estate (Dkt. 27); and an order granting with modifications Defendants' Motion to Stay Judgment Pending Exceptions in the above-captioned action (Dkt. 35) (collectively, the "Final Report").

2. On April 2, 2026, Defendants filed a Re-Notice of Exceptions to certain aspects of the Final Report (Dkt. 37) ("Exceptions").

3. The parties have fully briefed the Exceptions.

4. Oral argument on the Exceptions was held on July 13, 2026.

NOW, THEREFORE, the Court having carefully considered the briefing and oral argument on the Exceptions, IT IS HEREBY ORDERED, this 15th day of July, 2026, as follows:

1. The Court has reviewed the record and considered *de novo* the issues on exception.[1]

2. In November 2023, the New Castle County Register of Wills ("Register") granted Defendants letters testamentary to be co-executors of the estate of the parties' mother ("Estate").[2]

3. The Register approved the accounting and closed the Estate on September 27, 2024. On October 4, 2024, counsel for the Defendants, emailed Defendants indicating approval of the accounting and attached a "Receipt, Release and Refunding Agreement" to be provided to each beneficiary, including Plaintiff.[3] Defendants' counsel advised that "[o]nce we have received each of the signed and notarized releases back, we will make prepare [sic] the distributions to the beneficiaries."[4] On October 25, 2024, Defendants' counsel delivered checks to all beneficiaries, except for Plaintiff, who did not provide Defendants with an executed version of the requested release.

---

[1] *Fischer v. Rambo*, 2024 WL 3757838, at *1 (Del. Ch. Aug. 12, 2024).

[2] Along with their siblings, Defendants were also beneficiaries of the Estate.

[3] Dkt. 4 (Exhibits to Complaint) at 7.

[4] *Id.*; *id.* at 14 (Section 5 of that proposed agreement provides that the undersigned beneficiary "[r]eleases, forever discharges, and holds harmless the Estate and the Administrator, his agents, successors, and assigns, from and against all liabilities, claims, suits, demands, and causes of action of any kind, known or unknown, direct or indirect, matured or not matured, including for contribution or indemnity, of any nature whatsoever.")

4.     Plaintiff, appearing pro se, initiated this action, challenging the Defendants' handling of the Estate—specifically, that the Defendants "failed to properly account for certain bank accounts, withdrawals, vehicle sale proceeds, and life insurance proceeds."[5] Plaintiff also requested his "share of all money that was dispersed."[6]

5.     Defendants moved to dismiss.  Plaintiff opposed and simultaneously filed a Motion for Release of Funds, in which he sought his distribution of his undisputed share of the residue of the Estate.  In their opposition, Defendants agree Plaintiff is entitled to his share of the Estate but have not distributed that share because of his refusal to sign a release of his claims.[7] In their briefing, Defendants provided no legal authority to support their decision to withhold Plaintiff's share of the Estate based on his refusal to sign a release.

6.     Defendants also cross-moved for their attorneys' fees to be taken out of Plaintiffs' share.[8] In response, Plaintiff repeated his request for release of his share of the Estate and continued to challenge Defendants' withholding of his share based on the condition that he agree to a release of his claims.  In addition, he requested that Defendants pay for their own attorneys' fees.[9]

---

[5] Dkt. 34 ("Hearing Transcript") at 34.

[6] Dkt. 1, Complaint.

[7] Dkt. 21 at 4–5.

[8] In an accompanying affidavit, Defendants incurred $24,952 in attorneys' fees, and $478.50 in expenses, between September 15, 2025 and February 1, 2026.  Dkt. 22, Affidavit of Scott E. Swenson, Esq. In Support of Defendants' Motion for Attorneys' Fees and Expenses.

[9] Dkt. 23 ("[Defendants] need to pay for their own defense attorney.").

3

7. During oral argument before the Magistrate, the Magistrate asked Defendants' counsel whether he had "any legal authority that allows a fiduciary of an estate to condition funds for a beneficiary to be released upon the execution of a release."[10] Defendants' counsel responded, "I'm not aware of any authority to the contrary."[11]

8. The Magistrate thus denied Defendants' motion to dismiss as to Plaintiff's request for his share of the Estate, and granted Plaintiff's Motion for Release of Funds.[12] She also surcharged Defendants' attorneys' fees. The Magistrate found that it was not:

> appropriate for the [E]state or, as noted previously, the beneficiaries who have nothing to do with this to be responsible for attorneys' fees. The co-executors, through the advice of counsel, decided to withhold the money that the [Plaintiff] was entitled to from the [D]efendant[s] if the [Plaintiff] did not sign a release. It was noted the plan was simply to hold this money essentially hostage without the release and refund agreement or hope the time period for the [Plaintiff] to sue for the attorneys' fees would lapse.[13]

9. On February 13, 2026, the Magistrate directed Defendants to distribute Plaintiff's share of the Estate—$59,052.42.[14]

10. Defendants moved to stay judgment pending exceptions, raising for the first time the argument that 12 *Del. C.* § 2312(b) authorizes Defendants to condition

---

[10] Hearing Transcript at 28.

[11] *Id.*

[12] The Magistrate granted Defendants' motion as to Plaintiff's other claims, and denied their request to shift their attorneys' fees on Plaintiff.

[13] Hearing Transcript at 43.

[14] Dkt. 27.

distribution of Plaintiff's share of the Estate upon receipt of an executed release of his claims.[15] Despite Defendants' failure to raise this argument in their opposition to the Motion for Release of Funds, briefing on their motion to dismiss, or before the Magistrate when expressly asked to provide legal authority, Defendants now ask the Court to decide it.

11. But that is not how the exceptions process works. "Exceptions are heard on the same record as that before the Magistrate Judge, and [ ] new matters should be presented to the Magistrate Judge in the first instance."[16] The exceptions process is not available for parties to spring new arguments. Defendants' argument as to Section 2312(b) "is raised far too late."[17]

12. Last, the Court agrees with the Magistrate's finding that a surcharge was warranted, but diverges on the quantum. In her order, the Magistrate appeared

---

[15] Dkt. 30.

[16] *Magna-D Glob. Healthcare No. 1 Priv. Equity Fund v. CoImmune, Inc.*, 2025 WL 1568186, at *2 (Del. Ch. June 3, 2025); *see also* Ct. Ch. Rule 144(e) ("The Reviewing Judge hears exceptions based on the record before the Magistrate in Chancery, unless the Reviewing Judge determines to expand the record for good cause shown.")

[17] *Honma v. Schacknies*, 2024 WL 5126806, at *1 (Del. Ch. Dec. 16, 2024) (citing *Dolan v. Village of Clearwater Homeowner's Ass'n*, 2005 WL 2810724, at *3 n.12 (Del. Ch. Oct. 21, 2005) (Strine, V.C.) (on plaintiff's exceptions to Magistrate Judge's report, issue waived "because she did not fairly present it to the [Magistrate Judge]")). Even setting waiver aside, the Court expressed skepticism at Defendants' untimely and seemingly novel theory. Defendants make a conclusory assertion that a release is a form of "security" under Section 2312(b). But the little caselaw to which Defendants cite indicates the contrary—that the form of security operates as collateral to ensure fulfillment of a potential future payment obligation, not a release of one's claims. *See In re Est. of Farren*, 131 A.3d 817, 842 (Del. Ch. 2016) ("[E]xecutors 'must decide whether the security shall be in the form of cash, securities, refunding bond or otherwise.'") (quoting *May v. duPont*, 216 A.2d 870, 873 (Del. 1966)); *see also* SECURITY, Black's Law Dictionary (12th ed. 2024).

to surcharge Defendants all their attorneys' fees and costs. [18] Because the Magistrate's Final Report took issue with the Defendants' withholding of Plaintiff's undisputed share based on the condition of receiving an executed release, it is appropriate to surcharge Defendants' their attorneys' fees with respect to that specific matter alone.

13. For the reasons above, the Court denies the Exceptions and to the extent the Magistrate surcharged Defendants' all their attorneys' fees and costs, that portion of the Magistrate's Report is overruled. The parties will file a proposed implementing order consistent with this decision within 10 business days.

/s/ Nathan A. Cook
Vice Chancellor

---

[18] Dkt. 28 ("[A]ttorneys' fees and costs for this matter are surcharged to the co-executors and are not to be borne by the estate.").